# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CLARENCE JOHNEL WHITE, | ) ) | |
| Plaintiff, | ) ) | Civil Action No. 19-11102-FDS |
| v. | ) ) ) | |
| STEPHEN SPAULDING, MICHAEL SEGAL, BERHAN YEH, E. RILEY, and SCOTT MURRAY, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND

**SAYLOR, C.J.**

This is a lawsuit by an inmate alleging a violation of his Eighth Amendment rights.

Plaintiff Clarence Johnel White is serving a prison sentence in federal custody. He has brought a *pro se* complaint against various prison officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The complaint alleges that their denial of his requests for total hip replacement surgery violated the Eighth Amendment.

This matter is presently before the Court on defendants' motion to dismiss and plaintiff's motion to amend the complaint. For the reasons below, the motion to dismiss will be granted, and the motion to amend will be denied.

## I.   Background

### A.   Factual Background

The facts are stated as set forth in the complaint except where otherwise noted.

Clarence Johnel White is serving a prison sentence in federal custody. In 2014, he was

convicted and sentenced in the Western District of Texas for attempted coercion and enticement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). *See generally United States v. White*, 636 F. App'x 890, 890 (5th Cir. 2016). As of December 2018, he was incarcerated at FCI Seagoville in Texas. (*See* Compl. ¶¶ 3, 42). That month, he was transferred to the Federal Medical Center at Devens ("FMC Devens") in Ayer, Massachusetts. (*Id.*). After he filed the complaint, he was transferred to FCI Bastrop in Texas. (Proposed Am. Compl. at 2).

According to the complaint, White began experiencing severe pain in his right knee sometime before he was incarcerated. (Compl. ¶ 14). Between 2014 and 2017, he consulted several healthcare professionals about his knee pain while he was serving his sentence at federal correctional institutions in Texas. (*See id.* ¶¶ 15-22). At some point, he developed a favoring gait, changing how he walked because of the pain in his knee. (*See id.* ¶¶ 15, 21-22).

On March 8, 2017, White saw L. Brockman, a physician assistant employed by the Bureau of Prisons ("BOP"). (*See id.* ¶¶ 19-20). He told Brockman that his knee pain had "affected [his] right hip." (*Id.* ¶¶ 19-20). After reviewing x-ray results, Brockman concluded that White's favoring gait had injured his hip by "bone-on-bone articulation." (*Id.* ¶¶ 19-22).

On August 2, 2017, White saw Dr. Michael J. Champine, an orthopedic specialist at Texas Orthopaedic Associates. (*Id.* ¶ 23). Dr. Champine determined that he had "[e]nd-stage arthritis of the right hip." (*Id.*). According to the complaint, Dr. Champine told White that the "only remedy" for his condition was a total hip replacement ("THR") surgery. (*Id.* ¶ 24). Dr. Champine also told him that he may also need THR surgery on his left hip at some point in the future. (*Id.* ¶ 27).

Later that month, White told Brockman that he wanted THR surgery. (*Id.* ¶ 28). Brockman said he would relay White's request to the regional BOP office. (*Id.*). The complaint

alleges that the regional BOP office initially denied White's request, requiring him to first pursue "non-surgical measures, including activity modification and physical therapy." (*Id.* ¶ 29).

Over the next several months, White tried to alleviate his hip pain with physical therapy and over-the-counter medication. (*Id.* ¶ 30). On March 7, 2018, a therapist concluded that while physical therapy could increase White's mobility, it could not adequately address his "severe pain." (*Id.* ¶¶ 31-32).

On April 9, 2018, the regional BOP office approved the request for THR surgery. (*Id.* ¶ 33). According to the complaint, the surgery was not scheduled for several months, and during that time, prison officials in Texas refused to provide him with adequate pain medication. (*Id.* ¶¶ 34-39). The complaint alleges that the surgery was eventually scheduled, but only after he filed administrative complaints and a civil suit in federal court. (*See id.* ¶¶ 40-41).

On December 18, 2018, White was transferred by the BOP to FMC Devens for surgery. (*Id.* ¶ 42). Upon his arrival at FMC Devens, White was evaluated by E. Riley, a physician assistant. (*Id.* ¶¶ 8, 43-44). The complaint alleges that although White told Riley that he had pain in his hip, knee, and back, he did not receive adequate pain medication. (*Id.*).

On March 25, 2019, White saw Dr. Q. Yin, a physician-contractor hired by the BOP. (*Id.* ¶¶ 47-49). According to the complaint, Dr. Yin determined that the only solution to White's injuries was THR surgery and requested an "urgent" orthopedic surgery consultation. (*Id.*). Dr. Yin also canceled White's physical therapy because it was ineffective and instructed that he cease taking Ibuprofen because he had been doing so for too long. (*Id.*).

On March 26, 2019, Dr. Scott Murray, a primary-care physician at FMC Devens, canceled the orthopedic surgery consultation scheduled by Dr. Yin. (*Id.* ¶ 7, 50). The complaint alleges that on April 3, 2019, Dr. Murray told White that his request for surgery had been denied

by the Utilization Review Committee at FMC Devens because of his age. (*Id.* ¶ 51).[1] It also alleges that Dr. Murray told White that if he did not like the decision, he could file a complaint with the BOP or sue Dr. Murray in court. (*Id.* ¶ 52).

On April 10, 2019, White spoke with the assistant warden of FMC Devens, Michael Segal, and its clinical director, Dr. Berhan Yeh. (*Id.* ¶¶ 5, 6, 53-54). The complaint alleges that Segal agreed with the denial of the request for surgery and told White that while the surgery had been approved by the regional BOP office, it also had to be independently approved by officials at FMC Devens. (*See id.*). It alleges that Dr. Yeh only told White that if he did not like the decision to deny him THR surgery, he could sue Dr. Yeh. (*Id.*).

On May 2, 2019, White contacted the warden of FMC Devens, Stephen Spaulding. (*Id.* ¶¶ 4, 55-57). After looking into the matter, Spaulding told White that the surgery had been denied due to his age and "the only thing" he could do was "start [a] grievance procedure."[2]

### B. Procedural Background

On May 6, 2019, White filed a request for an administrative remedy seeking approval of the THR surgery. (*Id.*, Ex. D at 8). On May 7, 2019, the administrative remedy coordinator at FMC Devens rejected the request because White had failed to first try to resolve it informally and he had not submitted it through an authorized person. (*Id.*, Ex. D at 7). White later re-

---

[1] The complaint does not clarify whether White was allegedly denied a hip replacement because he was too young or too old. It appears from one of the attached exhibits, a discharge summary written by Dr. Murray, that he was denied a hip replacement because he was 42 years old and thus relatively young. (Compl., Ex. C). It states that because White was of a relatively "young age," he would likely need multiple hip replacements if he had the THR surgery now, making it advisable to try to delay the surgery through "conservative management." (*Id.*).

[2] The complaint states that White initially spoke to Spaulding on May 2, 2019, and then followed up with him on April 7 and 15, 2019. (Compl. ¶¶ 55-57). Based on the sequence of events, those two latter dates appear to be mistakes, and White presumably followed up with Spaulding on May 7 and May 15.

submitted his request and it was rejected again for the same reasons.  (*Id.*, Ex. D at 6).[3]  According to the complaint, White eventually exhausted the administrative procedures.  (*Id.* ¶¶ 12-13).

On May 22, 2019, White filed a free-standing request for a temporary restraining order with this Court.  On May 31, 2019, the Court denied that request and advised him that in order to proceed with this action, he must, among other things, file a complaint.

On June 17, 2019, White filed the complaint in this action, alleging violations of his Eighth Amendment rights by Spaulding, Segal, Riley, Dr. Yeh, and Dr. Murray.  Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.  In response, White has filed a motion to amend the complaint.

## II.      Defendants' Motion to Dismiss

### A.      Standard of Review

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

---

[3] There is a handwritten note on the second rejection, presumably made by White, that states that as of June 4, 2019, he had submitted the remedy request a third time and that it had again been rejected.  (*See* Compl., Ex. D at 6).

defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A document filed by a *pro se* party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, while *pro se* complaints are accorded an "extra degree of solicitude," *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir. 1991), they still must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," *Gagliardi*, 513 F.3d at 305.

**B.    Analysis**

**1.    Whether Plaintiff Exhausted Administrative Remedies**

Defendants first contend that the complaint should be dismissed because plaintiff has not exhausted his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA requires prisoners to exhaust "such administrative remedies as are available" before filing suit under any federal law. 42 U.S.C. § 1997e(a). That limitation on the ability of prisoners to sue "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy the exhaustion requirement, "prisoners must 'complete the administrative review process in accordance with the applicable

procedural rules,' . . .—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)) (citations omitted).  A plaintiff's failure to exhaust administrative remedies is an affirmative defense as to which a defendant bears the burden of proof.  *Cruz-Berríos v. Gonzáles–Roserio*, 630 F.3d 7, 11 (1st Cir. 2010) (citing *Jones*, 549 U.S. at 216).

"[T]he PLRA exhaustion requirement requires proper exhaustion."  *Woodford*, 548 U.S. at 93.  Proper exhaustion, in turn, "demands compliance with [a penal institution]'s deadlines and other critical procedural rules."  *Id.* at 90.  Thus, to meet the requirement of proper exhaustion, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Acosta v. U.S. Marshals Serv.*, 445 F.3d 509, 512 (1st Cir. 2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

The BOP has established an administrative remedy procedure by which prisoners can seek formal review of their complaints.  A prisoner must first try to resolve any complaint informally.  28 C.F.R. § 542.13(a).  If that fails, the prisoner may then submit a formal written administrative remedy request.  28 C.F.R. § 542.14(a).  If that formal request is denied, the prisoner may then appeal to the Regional Director of the BOP.  28 C.F.R. § 542.15(a).  Finally, "[t]he decision of the Regional Director may be appealed to the General Counsel's office."  *Leja v. Sabol*, 487 F. Supp. 2d 1, 2 (D. Mass. 2007) (citing 28 C.F.R. § 542.15(a)).

It appears that plaintiff may have exhausted the BOP's administrative remedy procedures, but for a prior complaint—not this one.  Based on the complaint and its exhibits, it seems that he previously filed a formal request for THR surgery and exhausted his appeals. (*See* Compl., ¶¶ 12-13, Ex. D at 1-5).  But those administrative proceedings took place before his transfer to FMC Devens and his request was directed at the conduct of federal prison officials in Texas.  (*See id.*).

7

Thus, even if he exhausted the BOP's procedures with respect to that request, that did not suffice to exhaust them as to this complaint, which arose later and concerns different conduct by different federal officials. *See Acosta*, 445 F.3d at 512.

As for the present claim, it is undisputed that plaintiff exhausted the first level of the BOP's procedures. He filed a formal administrative remedy request at least twice, and it was rejected both times because he had failed to first seek informal resolution and had not filed the request through authorized channels. (Compl., Ex. D at 6-8). Plaintiff disputes whether the first reason is correct. He alleges that he tried to informally resolve his complaint by speaking with Dr. Murray, Segal, Dr. Yeh, and ultimately Spaulding, who told him that his only other option was to file a formal grievance. (*See* Compl. ¶¶ 50-57). But whatever the merits of that dispute, he was required to appeal the denial of his administrative remedy request, first to the Regional Director and then to the General Counsel's office. 28 C.F.R. § 542.15(a).

It is not clear from the complaint whether plaintiff exhausted the BOP's appeals process. The complaint broadly asserts that he "exhausted his procedure remedies." (Compl. ¶ 13). But it contains no indication either way of whether he appealed the denials of his formal administrative request to either the Regional Director or the General Counsel's office.

Defendants contend that plaintiff never appealed the denial of his requests to the BOP's General Counsel's office. In support of that contention, they have submitted the declaration of a legal assistant at FMC Devens. (*See generally* Defs. Mem., Ex. 1 ("Magnusson Decl.")). She states that while plaintiff later appealed some of his administrative remedy requests to the Regional Director, he never appealed to the General Counsel's office. (*Id.* ¶¶ 7-12). Thus, according to defendants, he did not undertake the final level of appeal necessary to exhaust his claims. *See* 28 C.F.R. § 542.15(a); *Strong v. Lapin*, 2010 WL 276206, at *4 (E.D.N.Y. Jan. 15,

2010) ("Until the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.").

However, defendants have not shown that the PLRA exhaustion issue may be properly decided at this juncture. As set forth above, PLRA exhaustion is an affirmative defense as to which defendants bear the burden of proof. A motion to dismiss may therefore be granted on the ground of failure to exhaust "only where 'the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" *Hudson v. MacEachern*, 94 F. Supp. 3d 59, 67 (D. Mass. 2015) (quoting *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001)); *see, e.g.*, *Riley v. Antonelli*, 2020 WL 129057, at *2 (D.R.I. Jan. 10, 2020).

Here, defendants rely on extrinsic evidence in order to establish that plaintiff failed to exhaust the BOP appeals process. Thus, "the matter cannot be determined from a review of the four corners of the complaint." *See Dantone v. Bhaddi*, 570 F. Supp. 2d 167, 173 (D. Mass. 2008). If defendants are correct, the matter may be resolved by summary judgment, but not on a motion to dismiss. *See id.* Defendants' motion to dismiss for failure to exhaust administrative remedies will therefore be denied.

### 2. Whether the Complaint States a Claim Under the Eighth Amendment

Next, defendants contend that the complaint should be dismissed because they are entitled to qualified immunity. The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, defendants address only the first half of the two-part test for qualified immunity: "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right." *Mitchell v. Miller*, 790 F.3d 73, 77 (1st Cir. 2015); *see also Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009). Thus, their argument is essentially that

the complaint does not state a cognizable claim under the Eighth Amendment.

Plaintiff seems to acknowledge as much. He has filed a motion to amend his complaint, the merits of which are addressed below. In that motion, he asks for a chance to drop his claim under *Bivens*, 403 U.S. 388, in favor of an amended claim for a writ of mandamus. Nevertheless, in the interest of construing plaintiff's *pro se* pleadings liberally, the Court will address whether the complaint states a claim under the Eighth Amendment.

To prove that a failure to provide medical care violates the Eighth Amendment, "a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014).

The allegations in the complaint indicate that plaintiff's knee and hip injuries are serious. According to the complaint, multiple physicians have evaluated his injuries and concluded that some treatment—surgery, physical therapy, or medication—is necessary. *See id.* (describing a serious medical need as "one that has been diagnosed by a physician as mandating treatment") (quotations omitted). That said, the Eighth Amendment "does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." *Id.* Thus, there is some question as to whether plaintiff has a serious medical need requiring THR surgery, as opposed to some other suitable medical treatment. At this stage, however, plaintiff is entitled to have all reasonable inferences drawn in his favor. In this case, that means assuming that he requires THR surgery rather than some other course of treatment—a conclusion allegedly endorsed by at least one physician. (*See* Compl. ¶ 24).

However, the complaint does not allege any conduct by defendants that rises to the level of deliberate indifference. "[D]eliberate indifference defines a narrow band of conduct and

requires evidence that the failure in treatment was purposeful." *Id.* (quotations and citations omitted). By contrast, the complaint here alleges that each of the defendants exhibited, at worst, "an inadvertent failure to provide adequate medical care." *See Estelle*, 429 U.S. at 105. Upon plaintiff's arrival at FMC Devens, Riley evaluated him and apparently provided him with pain medication, albeit less than he requested. (*See* Compl. ¶¶ 43-44). Later, Dr. Murray evaluated him and concluded that, in order to minimize the number of surgeries he would need over his lifetime, it would be better to try and manage his pain initially by means of physical therapy, medication, and accommodations in his working and sleeping arrangements before resorting to surgery. (Compl., Ex. C). As for Segal and Dr. Yeh, the complaint alleges only that they did not overturn Dr. Murray's decision. (Compl. ¶¶ 53-54). Finally, the complaint alleges that Spaulding, far from ignoring plaintiff's needs, looked into why his surgery was denied before declining to overrule that decision. (Compl. ¶¶ 55-57).

In summary, even assuming the allegations in the complaint are true, defendants did not deliberately ignore plaintiff's medical needs, or wantonly inflict unnecessary pain. Rather, they made reasoned medical judgments about how to best care for plaintiff's injuries (or merely approved those decisions).[4] Plaintiff's claim, therefore, is essentially "a disagreement with prison officials about what constitutes appropriate medical care," and the complaint "does not state a cognizable claim under the Eighth Amendment." *DesRosiers v. Moran*, 949 F.2d 15, 20 (1st Cir. 1991). Accordingly, Count 1—the sole count alleged in the complaint—will be

---

[4] According to the complaint, Drs. Murray and Yeh invited plaintiff to sue them when he complained about their decisions on his course of treatment. (Compl. ¶¶ 52, 54). Even assuming that is true, it would not constitute the type of deliberate indifference that is necessary to show an Eighth Amendment violation. *See Kosilek,* 774 F.3d at 83 (explaining that even "wanton disregard" must rise to the level of "criminal recklessness" to violate the Eighth Amendment).

dismissed for failure to state a claim upon which relief can be granted.[5]

### III. Plaintiff's Motion to Amend

#### A. Standard of Review

Under Fed. R. Civ. P. 15, a party may amend its pleading once as a matter of course within 21 days after serving it, or within 21 days after service of a responsive pleading or motion under Fed. R. Civ. P. 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). All other amendments require the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2).

Under Fed. R. Civ. P. 15(a)(2), leave to amend a complaint shall be "freely give[n] . . . when justice so requires." However, courts have discretion to deny leave to amend for several reasons, including "futility of amendment." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing reasons).

#### B. Analysis

Plaintiff seeks to amend the complaint to dismiss his claim under *Bivens*, 403 U.S. 388. In its stead, the proposed amended complaint is styled as a petition for a writ of mandamus pursuant to 28 U.S.C § 1361. (*See* Proposed Am. Compl. at 1). It is brought against an entirely different set of defendants: William Barr in his official capacity as the Attorney General; Michael Carvajal in his official capacity as the Director of the BOP; S. Ma'at in his official capacity as the Warden of FCI Bastrop; and Dr. Jerome M. Adams in his official capacity as the Surgeon General.[6] And it appears to seek both an order compelling that the surgery be

---

[5] Defendants also contend that all claims against Spaulding and Dr. Yeh must be dismissed because they are entitled to absolute immunity under 42 U.S.C. § 233(a) and Dr. Yeh was not properly served pursuant to Fed. R. Civ. P. 4. Because the only count alleged in the complaint will be dismissed for other reasons, the Court does not reach those questions.

[6] Pursuant to Fed. R. Civ. P. 25(d), Michael Carvajal has been substituted for the previous Director of the BOP, Kathleen Hawk Sawyer. Similarly, the amended complaint names the "U.S. Surgeon General" as a defendant. Accordingly, the name of the Surgeon General, Dr. Jerome M. Adams, has been substituted for Dr. Bruce Gillingham, who appears to be the Surgeon General of the U.S. Navy. *See* Fed. R. Civ. P. 17(d).

performed and money damages. (*Id.* at 7).

Plaintiff is not entitled to amend the complaint as a matter of course under Fed. R. Civ. P. 15(a)(1). He did not move to amend the complaint until December 13, 2019, several months after most defendants were served and 28 days after they collectively filed their motion to dismiss. (*See* Dkt. Nos. 18-24).[7]

The question then becomes whether plaintiff should be given leave to amend under Fed. R. Civ. P. 15(a)(2). The government contends that amendment would be futile because (1) plaintiff has not exhausted his remedies under the PLRA and (2) he has been transferred to FCI Bastrop, and therefore the original defendants are no longer responsible for his medical care. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). The court must review a proposed amended complaint for futility under the "standard [that] applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006).

As set forth above, whether plaintiff failed to exhaust his administrative remedies is a question that cannot be resolved without referring to extrinsic evidence, and the motion to amend will not be denied on that basis. And while it is true that the original defendants are no longer responsible for plaintiff's care, the amended complaint substitutes them with a different set of defendants, including officials at FCI Bastrop, where plaintiff is now in custody.

Nonetheless, the proposed amendment is rife with problems. To begin, in light of the doctrine of qualified immunity, it is highly doubtful whether plaintiff can obtain money damages from any of the defendants, no matter how the claim is recast. More fundamentally, the

---

[7] Defendants contest whether Dr. Yeh was properly served at all. (Defs. Mem. at 11).

proposed amended complaint, like the original complaint, does not allege the type of deliberate indifference that would give rise to an Eighth Amendment violation.  Again, "a claim of inadequate medical treatment which reflects no more than a disagreement with prison officials about what constitutes appropriate medical care does not state a cognizable claim under the Eighth Amendment." *DesRosiers*, 949 F.2d at 20.  Finally, it is also unclear whether venue in this district is appropriate, as none of the parties is now located in Massachusetts:  three defendants are in Washington, D.C., one is in Texas, and plaintiff himself is now in Texas.

The government has not fully briefed the issues raised by the proposed amended complaint, again relying both on the defense of failure to exhaust and the fact that the original defendants are no longer responsible for plaintiff's medical care.[8]  Nonetheless, under the circumstances, it seems clear that the amendment would be futile, at least in the form of the amended complaint proposed by plaintiff; at the very least, the allegations, even taken as true, do not amount to a showing of deliberate indifference by the four named defendants.  There is nothing in the complaint to suggest that those four individuals—the Attorney General, the Director of the BOP, the Surgeon General, or the warden at FCI Bastrop—made any decisions of any kind concerning plaintiff's medical care.

The motion to amend the complaint will therefore be denied.  That denial, however, will be without prejudice, in order not to preclude plaintiff entirely from asserting a proper claim, if one exists, against the proper defendants in a proper forum, after his administrative remedies are exhausted.

---

[8] The government may not have received the notice of plaintiff's proposed amendment that is required by the local rules.  It appears that plaintiff did not comply with Local Rule 15.1, which provides that a party moving to amend a complaint to add new parties must serve the motion on the proposed new parties at least 14 days in advance.  LR, D. Mass. 15.1(b).

## IV. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED, and plaintiff's motion to amend is DENIED without prejudice.  This matter is hereby DISMISSED.

**So Ordered.**

Dated:  April 24, 2020

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court